# H. HACKFELD & COMPANY, LIMITED, *v.* W. C. ACHI, KAPIOLANI ESTATE, LIMITED, W. R. CASTLE AND J. M. MONSARRAT.

### APPEAL FROM CIRCUIT JUDGE. FIRST CIRCUIT.

SUBMITTED FEBRUARY 23, 1905.     DECIDED MARCH 6, 1905.

FREAR, C.J., HARTWELL, J., AND CIRCUIT JUDGE DE BOLT IN PLACE OF WILDER, J.

MORTGAGE FORECLOSURE—*collateral security—suit for foreclosure by assignee of note and mortgage assigned by way of collateral security.*

A mortgage by A. to M. to secure A.'s promissory notes was assigned with the notes to the plaintiff and its assigns "by way of collateral security" for payment of M.'s note to the plaintiff. The deed of assignment provided that the plaintiff was "to have full authority to assign, transfer or sell said security at public or private sale either in their own name or as my attorney" and con-

tained an appointment of the plaintiff as the assignor's attorney "to proceed in my name by suit or otherwise for the purpose of enforcing the payment of the said promissory notes of the said W. C. Achi either by sale of the mortgaged premises under the terms of the said mortgage securing the said notes as aforesaid or otherwise in the same manner that I could have done in case the above note given by me to the said H. Hackfeld & Company, Ltd., is not paid at maturity." Held: Under the assignment the plaintiff in its own name could foreclose the mortgage in default of payment of the indebtedness so secured.

BOND TO STAY ORDER OF SALE PENDING APPEAL.

The defendants having appealed from an order of sale, the court ordered the sale to take place despite the appeals unless the defendants on or before a date named filed a bond in the sum of $2,000 conditioned for payment of interest on the principal debt until decision on the appeals. Held: The bond was authorized by statute.

DEMURRER FILED TOO LATE.

Defendant A. did not appear within the time limited in the summons except to object to an order appointing a receiver. About three months after the time limited, and at the time set for hearing, he filed a general demurrer which on plaintiff's motion was struck from the files, although no order was made that the bill as against him be taken as confessed. He afterwards appeared and contested the bill in various ways and offered no defense other than the demurrer. Held: The demurrer was properly struck from the files.

FEDERAL STAMP ACT.

Promissory notes dated July 1, 1899, were not subject to the U. S. stamp act, which was not then in force in the Hawaiian Islands.

SALE IN TWO PARCELS INSTEAD OF A WHOLE OR IN PARCELS AS DESCRIBED IN MORTGAGE.

It appearing by affidavit of an attorney of the plaintiff familiar with the property that it could best be sold in two parcels which were far removed from each other, rather than as a whole or in the numerous parcels described in the mortgage, held: The sale was properly ordered to be made in two parcels.

SALE OF LIVE STOCK AND OTHER PERSONAL PROPERTY WITH EACH PARCEL TOGETHER WITH ALL THE STOCK, ETC., AND OTHER GOODS AND CHATTELS THEREUPON.

Held: The sale of the live stock and other personal property

in connection with each parcel without suggestion of the approximate number of the animals or whether they were in one or the other of the two widely separated tracts of land was not advantageous, therefore the decree confirming the sale will be set aside unless within one week from the dicision the plaintiff remit from its deficiency judgment against the defendants the sum of $6,470 for the value of the animals shown by the receiver's subsequently filed report to have been on the premises.

ID.—*evidence.*

Evidence of the defendant Achi as to the value of the property sold and the number of animals on the premises was struck off as being uncertain and speculative. Held: The evidence was too uncertain and conjectural to authorize the inference that the sale was improperly made.

### OPINION OF THE COURT BY HARTWELL, J.

This was a bill to foreclose a mortgage made July 1, 1899, by the defendant Achi to the defendant Monsarrat to secure the mortgagor's four notes aggregating $40,000 and interest, payable respectively to Monsarrat's order in six months, one year, two and three years from their date. At the same time Monsarratt gave the plaintiff his promissory note for $42,101.86 payable to the plaintiff's order "within three years after date" with interest at eight per cent. and executed and delivered to the plaintiff an instrument reciting his above mentioned note and declaring that in consideration of his indebtedness to the plaintiff upon his said note he did thereby "sell, assign, transfer and convey to the said H. Hackfeld & Company, Ltd., and their assigns by way of collateral security" the said promissory notes of Achi (copying them), together with the said mortgage. The instrument goes on to provide as follows:

"The said H. Hackfeld & Co., Limited, to have full authority to assign, transfer or sell said security at public or private sale, either in their own name or as my attorney; such assignment, transfer or sale to be without prejudice to me as payee and mortgagee under the said promissory notes and mortgage securing the same, and all amounts received by the said H. Hackfeld & Co., Limited, from any such assignment, transfer or

sale to be placed to my account in satisfaction of my said indebtedness to the said H. Hackfeld & Co., Limited, and any balance over and above such indebtednss to be paid to me or my personal representatives."

The instrument contains an appointment of H. Hackfeld & Company as Monsarrat's attorney with power of substitution "to proceed in my name, by suit or otherwise, for the purpose of enforcing the payment of the said promissory notes of the said W. C. Achi either by sale of the mortgaged premises under the terms of the said mortgage securing the said notes as aforesaid, or otherwise in the same manner that I could have done, in case the above note given by me to the said H. Hackfeld & Co., Limited, is not paid at maturity; and after deducting the amount of my said indebtedness to the said H. Hackfeld & Co., Limited, and all costs and expenses connected with the collection of said notes hereby assigned, or with the sale of the said mortgaged premises, to pay over the balance remaining, if any, to me or my personal representatives. But upon payment of the above promissory note by me to the said H. Hackfeld & Co., Limited, or its assigns then the said H. Hackfeld & Co., Limited, or its assigns shall re-transfer the said collateral security to me or my legal representatives."

It appears by the record that the plaintiff filed its petition for foreclosure April 5, 1904. Service of process returnable in ten days after service was made April 5 on the defendant Achi and on April 6 on the defendants Castle, Monsarrat and the Kapiolani Estate. Monsarrat's answer was filed April 14, admitting the allegations in the bill of complaint and consenting to the granting of the relief prayed for. Time for answering was extended for the other defendants until April 27 and April 27 was extended for fifteen days thereafter. May 16 the Kapiolani Estate filed a demurrer to the bill, which was overruled by consent August 22, with leave to answer over. July 21, on the plaintiff's motion sunpported by affidavit of H. A. Isenberg, a receiver was appointed to take charge of and preserve the live stock covered by the mortgage pending the de-

termination of the cause, the receiver being given authority to prevent interference with the live stock by the defendant Achi. July 22 Achi moved to set aside the order appointing the receiver on the ground that it was made in his absence, because of mistake and excusable neglect, and also that there were no facts sufficient to authorize the appointment. Achi's affidavit is in substance that he thinks the ranch is increasing in value, that he denies the charges of improper conduct set forth in Isenberg's affidavit and avers that "while it is true that he has admitted that he has no legal defense, inasmuch as the interest is unpaid and the principal overdue in part, yet he believes that if plaintiff would give him further time he could fully pay and discharge the said mortgage." Castle's affidavit is that he understood that the motion was to be heard at 9:30 a. m. on Friday, July 22, and that Derby, one of the plaintiff's attorneys, had so informed him. This is met by Derby's affidavit denying that he told Castle that the motion would be heard at 9:30 and alleging that he "distinctly informed said W. R. Castle that the aforesaid motion would be heard at 9 a. m." September 2 plaintiff filed a motion that the case be set down for hearing at an early date. September 9 Castle filed an answer admitting portions of the bill, denying information as to other portions, leaving the plaintiff to prove the rest and averring his ownership of that portion of the mortgaged land known as Kaohe 4 "containing an area of 1135 acres more or less" by deed from Achi of April 17, 1900, released from the mortgage May 10, 1900, and claiming that the premises so conveyed and released were not subject to the mortgage and should be excepted from the foreclosure; also that he is "owner of all the other premises described in said mortgage," admitting that they "are subject to the lien of said mortgage," and averring that he is the "owner of all the cattle, horses, pigs and other chattels on the said premises whether subject to the lien of said mortgage or not." September 12 the Kapiolani Estate filed its answer, admitting the execution of the mortgage and its assign-

ment to the plaintiff for the purposes set forth in the deed of assignment, claiming that the purpose of the assignment was solely to secure Monsarrat's note, denying that the Achi notes had not been paid, claiming the mortgaged property except Kaohe 4 under a mortgage from Achi of February 24, 1903, to secure payment of $6,163.32 on Achi's note for that sum payable to this defendant and due and owing; further claiming for itself the dower right released by Achi's wife under this mortgage and not released in the former mortgage and that a foreclosure decree ought to confirm the dower right and its value to this defendant, submitting that no decree for foreclosure could be made because the bill does not aver that Monsarrat had failed to pay his note or that the plaintiff is entitled to payment of Achi's notes. Upon the filing of this answer the plaintiff by leave of court amended its petition by averring demand upon Monsarrat for payment of his note and that he failed to pay the same, and that the same with interest is still unpaid and owing to the plaintiff. On September 2 plaintiff moved for rehearing, giving all the defendants notice that the motion would be presented September 6 at 10 o'clock a. m. We see no record of the hearing of this motion, but the transcript shows a hearing September 10, at which Monsarrat was present in person, Castle and Achi were represented by Mr. Withington and the Kapiolani Estate and Achi by Mr. Ashford. A general demurrer of Achi was that day filed by Mr. Ashford, being Achi's first appearance otherwise than in his motion to set aside the order appointing the receiver. It was claimed for Achi that he was at liberty to plead until a default had been entered, but on the plaintiff's motion his demurrer was struck from the files because not filed within the time limited by law. The hearing was resumed September 12 when the court, in answer to objections that the plaintiff was not entitled to a foreclosure, said that it was "satisfied upon investigation that the holder of a promissory note and mortgage given for payment of the same, assigned to him as collateral

security, would entitle him to maintain this action." The plaintiff's evidence was that the property mortgaged had been sold by Monsarrat to Achi for $10,000 cash, balance of $40,000 secured by the mortgage, which was therefore within the statute excluding dower. The defendants objected to the introduction of the deed and mortgage, mortgage notes and assignment on the ground that they were not stamped according to the Federal law, which as claimed was in effect at the date of the instruments, the act relied upon being "An act to provide ways and means to meet war expenses and for other purposes," which went into effect June 14, 1898. The evidence showed that one note for $5,000 had been paid by Achi on account of the mortgage and that $38,429.79 were due and owing on the other notes, and that Monsarrat, although requested, had made no payment upon his note other than the said payment of $5,000 which was credited to him, and that the balance of his note remained owing and unpaid. The defense placed in evidence the deed from Achi to Castle of Kaohe 4, the plaintiff's release of the same, Achi's deed to Castle of January 21, 1904, of the equity in the property covered by the mortgage to Monsarrat, and the mortgage of Achi to the Kapiolani Estate of February 24, 1903. The court made a decree of foreclosure and sale September 19, excepting the land Kaohe 4 released to Castle, to raise the amount of $38,429.79 due to the plaintiff with costs of suit and of sale, the property to be sold by Commissioner Simonton in two parcels described in the order of sale. The first parcel included twenty-four pieces of land partly in fee and partly in leasehold, "together with all the stock, cattle, horses, donkeys, pigs, etc., and the brand and branding irons, buildings, agricultural tools and implements, dairy fixings, implements and paraphernalia, furniture, and all other goods and chattels upon and used in the enjoyment of the aforesaid premises, as covered by the mortgage of the defendant W. C. Achi, said stock, etc., being described in the aforesaid mortgage as follows: 'Together with the stock now upon all the afore-granted premises and heretofore sold and conveyed

by the said J. M. Monsarrat to said W. C. Achi, as hereinafter
stated, which stock is branded Y and consists approximately of
four hundred head of cattle as nearly as can be ascertained;
approximately forty head of horses as nearly as can be ascer-
tained; donkeys, pigs, etc.; and in addition thereto, all the
increase thereof and any and all stock to be hereafter put upon
said premises during the existenc of this mortgage; and the
brand and branding irons, buildings, agricultural tools and
implements, dairy fixings, implements and paraphernalia, fur-
niture, and all other goods and chattels upon and used in the
enjoyment of the afore-granted premises.' "

The second parcel mentioned in the order of sale describes
four different pieces of land, "together with all the stock, cat-
tle," etc., in the same language above mentioned at the end
of the first parcel.  The order required the commissioner to sell
at public auction at the front door of the Judiciary Building,
in Honolulu, at noon on Saturday, October 22, 1904, after
giving public notice for at least three weeks prior to the sale in
the "Hawaiian Star" newspaper, as well as "in some paper
upon the island of Hawaii suitable for the publication of such
notices," and authorized the plaintiff, as well as the defend-
ants, to become purchasers.  September 28 the plaintiff moved
that the sale take place October 22 as ordered "despite the ap-
peals of the defendants," unless on or before October 10 they
filed a bond in the sum of $7,000 or in such sum as the court
deemed proper, conditioned for payment of the interst due
the plaintiff in case the sale did not bring sufficient to pay the
interest as well as the amount of the mortgage, basing the mo-
tion upon the affidavit of Pfotenhauer, a director of the plain-
tiff corporation, that the property was not worth the amount
due and that the plaintiff would suffer great loss if the sale
were put off until the appeal of the defendants was determined;
also that the defendant Achi was unable to respond to any
deficiency judgment.  The court, after hearing the parties,
granted the motion and ordered that the sale take place despite
the appeals on November 12, 1904, at 12 o'clock noon unless

the defendants on or before October 10 filed a bond in the sum of $2,000 "with good and sufficient surety conditioned for the payment of interest on the principal debt of the defendant W. C. Achi to the plaintiff until the decision on said appeals by the supreme court." November 18 the commissioner filed his return and account of sale with petition for confirmation of the sale, showing that he had conformed to the requirements of the order in publishing notices, and also had sent copies of the advertisement of the sale "to many prominent people and possible purchasers in the Territory, calling attention to the many advantages of the property to be offered for sale and the unusual chances for investment," and that through Morgan, a licensed auctioneer, he had caused the property to be sold at public auction November 12, 1904, at noon; that Franz Buchholtz became the purchaser of the first parcel for $9,500 and of the second parcel for $4,250; that immediately prior to the crying of the sale by the auctioneer the attorneys of the defendant Castle gave formal notice of objection to the sale on the ground that "the personal property is not described, nor is there any method by which it can be definitely ascertained what personal property is being sold, nor is it exposed or produced at the sale; and further, that included in the description is personal property of said W. R. Castle which has been mingled and mixed with the personal property, if any, which is subject to the mortgage, by the receiver in said action, and that the said receiver has not made any report from which it can be determined what said property is. Not waiving other objections heretofore made." The report showed the net proceeds of sale, exclusive of commissioner's fee, $11,756.50, leaving a deficiency of $27,014.42.

The receiver's report, dated November 26 and filed December 5, mentions that he had been informed only November 24 by mail of the auction sale on the 12th inst.; that in order to take care of and get together and count the cattle he had to build a fence about 6,000 feet long, securing a paddock of about 400 acres in which the cattle that were kept could stay for a few

weeks up to the sale; that he then engaged men to drive the cattle into the paddock and that the bulk of them and the horses had been secured; he kept only two men to go daily to hunt for stray cattle and take care of those which were caught, to drive horses and mules and look after pigs and donkeys. All this he says was done in Honomalino. He says that all the live stock was taken from Kolo to Papa except a few pigs; that he left the pigs and donkeys running where they were because there was no fence to put them into and no food for the pigs if they were caught. He says the cattle were in good condition, also the pigs and donkeys, but that the horses were rather poor because they had had to work very hard and had not had sufficient water and food; that he got in about 200 cattle, of which two or three died, thirty horses and mules, including a few colts, of which two of the older animals died in the dry weather; that there are said to be about sixty pigs and thirty donkeys running wild on a big tract of land overgrown with shrubs and cactus; that the drive would have been expensive and the receiver considered it the most economical to leave them alone and only take care that none should be stolen.

At the hearing upon the plaintiff's motion to confirm the sale the defendants filed objections which in substance were: 1. That the sale ought not to have been ordered pending appeals. 2. That the number and quality of the cattle and other live stock were unknown at the time of the sale and inaccessible to prospective purchasers. 3. That the division of the real estate into two parcels was arbitrary and unwarranted. 4. That the receiver became the purchaser of the property for prices far below its value and grossly inadequate. The defendant's evidence failed to show that inquiries were made at the sale with reference to the number of cattle and where they were. Monsarrat's evidence of the value of the property several years ago was stricken out by consent. His evidence concerning the number of cattle upon the premises was that there were 400 cattle at the last drive when he owned the ranch several years ago. He described the way most of the land lay, in

two long, narrow strips widely separated from each other, furnishing a map which was filed. Achi testified concerning his estimate of the value of the property and of the number of cattle upon it, which on the plaintiff's motion was struck out on the ground that it was speculative and uncertain. His evidence of other sales at a distance of some thirty-five miles was also on the plaintiff's objection ruled out. The court thereupon made an order confirming the sale, directing a conveyance to the purchaser and making a decree that the plaintiff have and recover of Achi the unpaid balance of $25,609.07, from which order and decree the defendants appealed. The defendants contend that the decree should be reversed because: 1. The demurrer of the defendant Achi was struck from the files. 2. The plaintiff had no right to maintain the suit. 3. Achi's notes ought not to have been received in evidence because not stamped. 4. The premises were sold in two parcels instead of as a whole, or in several parcels as described in the mortgage. 5. The order of sale of the stock and other personal property in connection with each parcel, and its description of the property was too indefinite and the property was not identified or exhibited at the time of the sale, and the sale was ordered before a report from the receiver to show what the personal property was which was to be sold, the number of each kind of animals, their condition, etc.

1. We think that the defendant Achi's demurrer was properly struck from the files, since it was filed long after the time within which the summons required him to appear. It has for many years been the practice in this jurisdiction to insert in the summons issued in equity cases a limit of time for the defendant to appear and answer, being "ten days after service, if the defendant resides on the island of Oahu, and twenty days after service if made on either of the other islands." This practice is defined in Paragraph C of Rule 21 of the Rules of the Circuit Courts promulgated May 27, 1893. There can be no doubt of the power of the court to limit the time in which a defendant may appear. The effect of the non appearance of

a defendant within the time limited would entitle the plain-
tiff to an order taking the bill as confessed. Such an order
would be a matter of course. *Oakley v. O'Neill,* 2 N. J Eq.
287. It is not essential, however, to further proceedings on the
bill that there be a formal entry that it is taken pro confesso.
*Linder v. Lewis,* 1 Fed. 378. After a bill is taken as confessed
there are certain defenses, among others the defense of an ade-
quate remedy at law, which cannot be made by the defendant.
*Electric Co. v. Reedy,* 66 Fed. 163. The demurrer was not
filed until three months after the time when the case was return-
able. The defendant subsequently appeared and contested the
bill in various ways and has offered no defense other than the
general demurrer that the bill did not state facts sufficient to
constitute a cause of action.

2. Monsarrat's assignment to the plaintiff of the Achi notes
and mortgage as security for payment of Monsarrat's note
authorized the plaintiff in its own name to foreclose the mort-
gage in default of payment of the indebtedness so secured. The
power expressed in the assignment to proceed in the assignor's
name to enforce payment of the Achi notes under the terms of
the mortgage did not limit the plaintiff to bring a foreclosure
suit in the name of the assignor. The only case cited by the
defense as opposed to this view is *Bank v. Hayes,* 112 Cal. 75,
in which it was held that the delivery of a note and mortgage
without endorsement or written transfer would not deprive the
mortgagee of his right to sue on them in his own name with con-
sent of the transferee. "At most," said the court, "it was only
a pledge and as between the pledgor and the pledgee the legal
title should remain in the former." In this case the legal title
in the mortgage and note was assigned to the plaintiff.

3. At the date of the notes the United States stamp act
was not in force in the Hawaiian Islands. In the case cited by
the defendant *(Makainai v. Hoy,* 14 Haw. 607), the notes were
dated January 10, 1901, when the Organic Act had taken effect.

4. We see no error in requiring the premises to be sold in
two parcels. The affidavit of Cooper, one of the plaintiff's attor-

neys, was before the court, setting forth that he was familiar with the property and believed it thus could be sold to the best advantage because the lands in the two parcels were far removed from each other; that the land was used principally for ranching and was to a great extent unfenced; and that it was then impossible to tell exactly what unbranded cattle, of which there were a great number, were covered by the mortgage and what cattle belonged to third parties; that he believed it would be impracticable to sell the cattle apart from the lands and a great expense to get the cattle together, and that they would bring more if sold with the land than if sold separately.

5.   It was evident, however, that the live stock was not sold to advantage with no suggestion of the approximate number of the animals or whether they were in one or the other of the two widely separated tracts of land.   The receiver who had been appointed to look up and care for the stock could before the sale have furnished the information shown by his report of November 26.   The plaintiff might have caused this information to be obtained or the defendants might have called for it. The case gives the impression that before the sale was ordered neither side cared about the matter; that both parties thought that, owing to the alleged inability of the mortgager to meet a deficiency judgment, a few thousand dollars more or less in the result would make no difference.   The bond required as a condition of suspending the order of sale pending the appeals was authorized by statute.   The evidence ruled out was too uncertain and conjectural to authorize an inference that the sale was improperly made; but by reason of the failure to specify in the order or advertisement of sale the approximate number of animals to be sold and on which of the two parcels of land they were to be found the decree appealed from will be reversed and the cause remanded, unless within one week from date of this decision the plaintiff shall remit from the deficiency judgment the sum of $7,500.   The value of the animals shown by the receiver's report, namely, 200 cattle at $20 a head, thirty horses (and mules) at $30, sixty pigs at $10 and thirty don-

keys at $2.50 (at the prices per head claimed by the defendants), would be $5,575. We allow the additional sum of $1,925, which is more than 33 1-3 per cent., to make up the above amount of $7,500 for stock on the lands not found by the receiver.

Upon the filing of such remittitur within the time mentioned the decree appealed from will stand.

*Kinney, McClannahan & Cooper* and *S. H. Derby* for plaintiff.

*Castle & Withington* for W. C. Achi and W. R. Castle.

*C. W. Ashford* for Kapiolani Estate.

*J. M. Monsarrat* pro se.